**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| ANTHONY MYERS, | ) | No. 80559-2-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | UNPUBLISHED OPINION |
| Respondent. | ) | |
| | ) | |

MANN, C.J. — Anthony Myers appeals his conviction for residential burglary. Myers argues that the jury instructions for residential burglary violated his right to due process because they relieved the State of its burden to prove all of the elements of residential burglary. Myers also argues that defense counsel's failure to object to these instructions constituted ineffective assistance of counsel. Finally, Myers raises several contentions in his statement of additional grounds under RAP 10.10.

We affirm.

I.

Alex Strazzanti was house sitting for his friend Mark Thomas while Thomas was away on the Olympic peninsula. Thomas's house was equipped with security cameras

that provided movement alerts and a live feed to a phone app, which Strazzanti used to monitor the home.

On the night of September 15, 2018, Strazzanti went to check on the house and noticed the alarm system was off, as well as some items that were moved around. He went home and called the police, then met them for a walk-through of the house. Noticing nothing missing, Strazzanti locked the house and returned home.

Around 3:40 a.m. the following morning, Strazzanti awoke to alerts from the security app on his phone. The camera feed showed two men in Thomas's home. Strazzanti called 911 and met police officers at the house.

Inside officers found Brent Gregory and Gia Ells, who they immediately took into custody. The officers then found Myers, who was in the bathroom showering. The officers allowed Myers to get dressed then took him into custody. At the time of arrest Myers had about $1,174.69 the keys to Thomas's house, and the keys to a car parked outside.

The State charged all three individuals with one count of residential burglary. The information alleged that each defendant "did enter and remain unlawfully in the dwelling of Mark L. Thomas, located at 2621 NE 105th St., Seattle . . . with the intent to commit a crime against a person or property therein. Myers and Ells went to trial as codefendants, arguing that they did not know their presence was unlawful. Myers presented the defense that he might reasonably have believed the house was abandoned, or that the person who gave him keys permitted his entry.

The State refuted Myers's defense by highlighting that the amount of money he had at the time of arrest was similar to what Thomas testified was missing (although

-2-

Myers claimed that the police tipped Thomas off to this dollar amount). In the alternative, the State argued that Myers was guilty of residential burglary because he invited Ells to take items from the home.

The State proposed pattern instructions for both residential burglary and the "to convict" instruction. Neither Myers nor Ells objected. The State also requested a jury instruction on accomplice liability consistent with its alternative theory, which the trial court granted over both defendants' objection. The court also instructed the jury on the lesser included offense of criminal trespass for Myers.

The jury convicted Myers and Ells as charged. Myers appeals.

II.

Myers argues that the jury instructions for residential burglary violated his due process protections because they relieved the State of its burden to prove all of the elements of residential burglary.[1] We disagree.

Because Myers did not object to the jury instructions before the trial court, RAP 2.5(a) prevents him from raising his objection on appeal unless it presents a manifest error affecting a constitutional right. State v. Sullivan, 3 Wn. App. 2d 376, 379, 415 P.3d 1261 (2018) (citing State v. O'Hara, 167 Wn.2d 91, 98, 217 P. 3d 756 (2009)). To establish that an error is "manifest," the party seeking review must show actual prejudice. In re Matter of Adoption of K.M.T., 195 Wn. App. 548, 567, 381 P.3d 1210 (2016).

---

[1] In his statement of additional grounds, Myers also argues that the instructions for accomplice liability were intended to manipulate the jury. Myers did not object to this instruction at trial, so he is precluded from raising it on appeal. RAP 2.5(a). Additionally, these instructions include the "knowing" element that he claims is required, so they are nonetheless sufficient.

In determining whether an error is practical and identifiable, and thus manifest, we place ourselves "in the shoes of the trial court to ascertain whether, given what the trial court knew at the time, the court could have corrected the error." O'Hara, 167 Wn.2d at 100. If manifest constitutional error is established, we must correct it despite a party's failure to raise the error at trial.

Myers asserts that, because the instruction for residential burglary did not include the mens rea of "knowingly" in regards to home entry, the instructions treated unlawful entry or remaining as a strict liability element of the offense and thus violated his right to due process. The pattern instructions, however, mirror the plain language of the residential burglary statute. It is unlikely the trial court's reliance on the pattern instructions was misplaced and any misplaced reliance certainly does not rise to the level of manifest constitutional error.

The jury instructions for residential burglary did not contain a mens rea for knowingly entering Thomas's residence, and they need not contain such an instruction because knowing unlawful entry is not an essential element of the crime. RCW 9A.52.025(1) defines residential burglary as:

> A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle.

Statutory interpretation is a question of law that we review de novo. State v. Mandanas, 168 Wn.2d 84, 87, 228 P.3d 13 (2010). "If the statute's meaning is plain on its face, [we] will give effect to that plain meaning as the expression was intended." TracFone Wireless, Inc. v. Washington Dep't of Revenue, 170 Wn.2d 273, 281, 242 P.3d 810 (2010). Plain meaning is discerned from all that the legislature has said in the

statute and related statutes which disclose legislative intent about the provision in question.  Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 11, 43 P.2d 4 (2002).

We recently addressed, and rejected, a similar argument to Myers's in State v. Moreno, 14 Wn. App. 2d 143, 470 P.3d 507 (2020).  Moreno argued that first degree burglary requires a knowing unlawful entry or remaining.  Moreno, 14 Wn. App. 2d at 152.  This court examined the plain language of the first degree burglary statute, stating that "[it] makes clear that a person must purposefully enter a building and intend to commit a crime therein, and their entry or remaining must be unlawful.  It does not require that a person know their entry or remaining is unlawful."  Moreno, 14 Wn. App. 2d at 155; RCW 9A.52.020(1).  Further, the court determined that the language in the first degree criminal trespass statute bolstered this interpretation.  Moreno, 14 Wn. App. 2d at 155.  The legislature purposely added "knowingly" in the first degree criminal trespass statute and deliberately omitted it from the first degree burglary statute.  This omission was additional evidence that "knowingly" was not intended to be an element of the latter crime.  Moreno, 14 Wn. App. 2d at 155.

Here, similar to Moreno, we can interpret the residential burglary statute for plain meaning.  The statute does not contain a mens rea beyond the "intent to commit a crime against a person or property therein."  The legislature's deliberate choice to omit any additional language of "knowingly" implies it was not intended to be an element of the crime.  Myers was entitled to jury instructions that accurately state the law and those

were the instructions he received.[2]  See Barnett v. Sequim Valley Ranch, LLC, 174 Wn. App. 475, 488, 302 P.2d 500 (2013).

Myers relies on City of Bremerton v. Widell, 146 Wn.2d 561, 570, 51 P.2d 733 (2002), for the premise that the State must prove knowledge of unlawful entry in order to convict for the offense of residential burglary.  Widell held that in order to prosecute criminal trespass, the State must disprove the defendant's reasonable belief that his entry was invited (a statutory defense to the crime).  146 Wn.2d at 570.  This opinion does not suggest that the State bears this same burden of proof in the greater offense of residential burglary.

Myers claims, however, that State v. Ponce, 166 Wn. App. 409, 269 P.3d 408 (2012), and State v. Cordero, 170 Wn. App. 351, 370, 284 P.2d 773 (2012) extend the Widell holding to residential burglary.  While these cases do state that a statutory defense to criminal trespass negates the unlawful entry element of residential burglary, they do not create an additional mens rea for the latter offense.[3]

When reviewing for manifest constitutional error, we place ourselves in the shoes of the trial court.  At trial, Myers did not object to the WPIC instruction for residential

---

[2] The jury instruction for residential burglary stated:
> To convict a defendant of the crime of residential burglary, each of the following elements of the crime must be proved beyond  a reasonable doubt:
> (1) That on or about September 16, 2018, the defendant entered or remained unlawfully in a dwelling;
> (2) That the entering or remaining was with intent to commit a crime against a person or property therein; and
> (3) That this act occurred in the State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

[3] Ponce also expressly approved the pattern instructions for residential burglary at issue in this case.  166 Wn. App. at 420.

burglary. He claims that the instruction need contain a <u>mens rea</u> that he knowingly entered Thomas's residence. Not only did the trial court's acceptance of the WPIC not raise to the level of manifest constitutional error, but an additional <u>mens rea</u> would be inconsistent with the statutory language for the crime of residential burglary.

III.

Myers argues that defense counsel's failure to object to the jury instructions at trial constituted ineffective assistance of counsel. We disagree.

A claim of ineffective assistance of counsel presents a mixed question of fact and law that we review de novo. <u>In re Pers. Restraint of Fleming</u>, 142 Wn.2d 853, 865, 16 P.3d 610 (2001). A defendant claiming ineffective assistance of counsel has the burden to establish that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant's case. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); <u>State v. McFarland</u>, 127 Wn.2d 322, 334 899 P.2d 1251 (1995). The inability to establish either prong is fatal to an ineffective assistance of counsel claim. <u>Strickland</u>, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. <u>State v. Stenson</u>, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). Our scrutiny of counsel's performance is highly deferential; we strongly presume the performance was reasonable. <u>State v. Grier</u>, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To establish prejudice, the defendant must demonstrate that there is a reasonable probability that but for counsel's performance, the outcome would have been different. <u>State v. McLean</u>, 178 Wn. App. 236, 248, 313 P.2d 1181 (2013).

Myers claim fails at the first step of Strickland. At trial, defense counsel agreed to WPIC 60.02.02, a pattern jury instruction that had never undergone a serious challenge. We can hardly consider counsel's lack of objection to such an instruction deficient. See, e.g., State v. Studd, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999) (stating that counsel cannot be faulted for requesting a jury instruction based on a then-unquestioned WPIC 16.02). Therefore, Myers's counsel was not ineffective for his failure to object to the instruction.

IV.

Myers raises additional arguments in his statement of additional grounds filed under RAP 10.10. We address each in turn.

A.

Myers argues that the prosecution improperly withheld evidence, constituting a Brady[4] violation. We disagree.

We review Brady claims de novo. State v. Davila, 184 Wn.2d 55, 74, 357 P.2d 636 (2015). "Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. To establish a Brady violation, the defendant must show that (1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching, (2) the evidence must have been suppressed by the State either willfully or inadvertently, and (3) the evidence must be material. Davila, 184 Wn.2d at 69.

---

[4] Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

Here, Myers claims that the prosecution suppressed evidence about the investigation of Officers Duus and Ross, as well as Detective Jones. At the time of the pretrial hearing on Brady evidence, there were internal police investigations regarding Duus, Ross, and Jones. The State claimed that the investigations were ongoing, that they may not even produce relevant information, and that they would provide updates if they were relevant. In turn, the trial court encouraged Myers to continue to inquire regarding the investigations moving forward.

At the time of the hearing, there was no showing that the investigations were going to yield any evidence that would have impeached their subjects at Myers's trial, that the evidence had be suppressed, or that it was material. As such, there was no Brady violation.

B.

Myers argues that defense counsel's failure to call Detective Jones to testify, failure to object to poor audio quality of recordings, failure to object to the State eliciting incriminating statements, failure to further investigate Brady evidence, and chosen framing of a motion to suppress constituted ineffective assistance of counsel.

In determining whether Myers received ineffective assistance of counsel, we apply the same Strickland standard. "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." Grier, 171 Wn.2d at 33 (quoting State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)).

First, Myers asserts that defense counsel was ineffective because counsel did not call Detective Jones to testify. "Generally, the decision whether to call a particular witness is a matter for differences of opinion and therefore presumed to be a matter of

legitimate trial tactics." In re Pers. Restraint of Lui, 188 Wn.2d 525, 545, 397 P.3d 90 (2017) (quoting In re Pers. Restraint of Davis, 152 Wn.2d 647, 742 101 P.3d 1 (2004)). Additionally, while counsel may not have called Detective Jones to testify, he did not discount the theory that the money found was compromised evidence (that Jones tipped Thomas off regarding the dollar amount). First, the State did not object to defense counsel introducing at trial the e-mail from Jones telling Thomas his money was in evidence. Second, defense had two interviews with Jones, and requested the State put her under subpoena.[5] Finally, defense counsel posited the theory of Jones tipping off Thomas during closing argument. Myers's counsel introduced Jones's e-mail to support the theory that Thomas was tipped off, interviewed Jones, and discussed the theory at closing, each of which can be classified as legitimate trial tactics. Thus, counsel's performance was not deficient.

Second, Myers asserts that defense counsel was ineffective because counsel failed to make a series of objections at trial. Even if Myers were to demonstrate this performance is deficient, he cannot establish that the deficient performance prejudiced his case. Defense counsel's failure to object to audio quality deemed poor by Myers, and failure to object to the State's narrative of what happened in the home did not rise to the level of prejudice and thus does not constitute ineffective assistance of counsel.

Finally, Myers asserts that defense counsel was ineffective because counsel did not further pursue Brady claims, and the way counsel framed a motion to suppress.

---

[5] There is discussion of defense counsel interviewing Jones on June 24 and July 23, 2019, but neither interview is before us on the record.

-10-

Both of these actions fall within the realm of trial tactics and, as such, do not constitute ineffective assistance of counsel.

C.

Myers argues that the prosecutor committed misconduct during closing argument. We disagree.

When reviewing claims of prosecutorial misconduct in closing argument, "the defendant bears the burden of showing that the [prosecutor's] comments were improper and prejudicial." State v. Lindsay, 180 Wn.2d 423, 430, 326 P.2d 125 (2014). If the defendant did not object at trial, then "unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice," the defendant has waived any claim of error. State v. Emery, 174 Wn.2d 741, 760-71, 278 P.3d 653 (2012). Under this standard of review, the defendant must show both that no curative instruction could have obviated any prejudice, but also that the prejudice resulting from the misconduct had a substantial likelihood of affecting the verdict. Emery, 174 Wn.2d at 760-71.

Myers did not object during closing argument. His claim on appeal is that the State was required only to put forth the facts, and that it manipulated evidence to express the opinion of Myers's guilt and witness credibility. Myers, however, does not offer evidence that a curative instruction could have obviated prejudice, nor that any existing prejudice would have a substantial likelihood of affecting the verdict. Rather, the record reflects that the State was merely fulfilling the purpose of closing argument— to persuade the jury. Myers fails to meet the burden required to show prosecutorial misconduct.

No. 80559-2-I/12

Affirmed.

_Mann, C.J._

WE CONCUR: